## DALE *et al.* v. BOARD OF EDUCATION OF THE CITY OF GUTHRIE.

No. 5522. Opinion Filed October 5, 1915.

(152 Pac. 116.)

**ATTORNEY AND CLIENT—Action for Agreed Fee—Instruction.**
Where the question at issue is whether a contract for legal services, for an agreed fee, included services on appeal to the Supreme Court, and there is evidence that the case was to be commenced in the district court, and the attorney was to receive a certain fee for his services if he won, and that upon being questioned as to just what that meant, the attorney said, "That means to carry it clear through," and "That means seeing it through to a finish," etc., an instruction "that the carrying of a case to the Supreme Court is not, in contemplation of law, another or a separate case; the final termination of a case means the end of it, in whatever court it may finally end—was not an erroneous declaration of law under the evidence.

(Syllabus by Brewer, C.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by Frank Dale and another, partners as Dale & Bierer, against the Board of Education of the City of Guthrie. Judgment for defendant, and plaintiffs bring error. Affirmed.

*Dale & Bierer,* for plaintiffs in error.

*Tibbetts & Green,* for defendant in error.

Opinion by BREWER, C. This is a controversy over the amount of an attorney's fee. Dale & Bierer, as plaintiffs below, brought suit against the board of education of the school district embracing the city of Guthrie, for the sum of $300, alleged to be the reasonable value of services rendered the school district in a lawsuit by the members of the board, elected under the new charter, to obtain possession of their offices. Said suit originated in the district court, and was finally determined by the Supreme Court in favor of said board of education. The board admitted that the services had been rendered as claimed, but refused to pay the sum of $300, and tendered to plaintiffs $100, as full compensation for their services, which the board claimed had been rendered under an agreement for that sum. So this controversy is over the amount of the fee, and as to whether there was a contract that the services in the case, including those in the Supreme Court, should be rendered for the sum of $100. If there was no contract as to the amount of the fee, there is ample evidence that a $300 fee would afford only reasonable compensation for the services rendered. If there was a contract, however, for a specific sum, and it included the work in the Supreme Court, then, of course, the question of reasonable fee would be immaterial. The jury found in favor of the board of education, and gave judgment for the plaintiffs for the sum of $100, the amount tendered by the board.

The errors complained of here are as to certain instructions given and refused. Plaintiffs in error excepted to, and predicate error upon, the giving of instructions Nos. 5, 6, 10, and 11. They follow:

"(5) If you find that there was no agreement as to what plaintiffs' fee should be between them and the board of education, then the plaintiffs would be entitled to recover a reasonable fee for the services performed. Testimony has been admitted as to the opinions of other lawyers as to the reasonable value of such services. This evidence is admitted as the opinions of those having special knowledge of the value of such services, but you are not bound by such evidence nor required to accept it as true; but you should give it such weight and credit as you deem it is entitled to. But you can consider it only in the event that you find that there was no express contract made between the school board and these plaintiffs for their services as attorneys. If there was an express contract by which it was agreed that the plaintiffs should represent the board of education in the litigation in question and carry it through to a final termination for the sum of $100, then you need not consider any evidence as to the reasonable value of such services, because in that event the plaintiffs could recover no more than the price agreed upon.

"(6) You are further instructed that in order that there may have been a contract between the plaintiffs and the defendant board, through its members, under which the plaintiffs should have conducted the litigation in question for an agreed fee of $100, the minds of both parties must have gone together on the same thing in the same sense. That is to say, it must have been the mutual intention of the parties at the time that, in case those members of the board of education lost the case in the district court, then they should be liable individually for only the sum of $50, and that if they won in the district court, that the sum of $100 was to be full compensation for the plaintiffs' services in the district court, and also in the Supreme Court, if the other side appealed the case. If you find that the agreement between the parties was that the $100 fee only covered the plaintiffs' services in the district court, then you should find the issues for the plaintiffs; but if you should find that the agreement be-

tween the parties was that the firm of Dale & Bierer were to carry the litigation through to a final termination, and that in no event should the board be required to pay more than $100, then your verdict should be for the defendants. If the plaintiffs did not anticipate that the case would be carried to the Supreme Court, but if they agreed to conduct the litigation to a final termination, that of itself would require them to conduct it in the Supreme Court, if it was taken there by the other side, even if they did not anticipate that it would be so taken, for the sum agreed upon."

"(10) In order to correct any erroneous impression from the argument of counsel, you are further instructed that the carrying of a case to the Supreme Court is not, in contemplation of law, another or a separate case—the final termination of a case means the end of it, in whatever court it may finally end.

"(11) You are further instructed that an agreement to carry a case through the district court does not mean it shall be carried to the Supreme Court for the same fees that are fixed for carrying it through the district court. The question in this case is, What was the understanding of these parties, as disclosed by the evidence? An agreement to carry a case to the end would mean to carry it through all of the courts into which it may be taken. You must determine from this evidence what the agreement was."

Certain points are made against, and it is attempted to point out error as to some of the statements in, the different instructions above set out. When the brief is studied it becomes apparent that the real objection to the instructions is based upon the claim that they are not applicable to the evidence; and this for the reason that, when the contract was made between the board of education and the attorneys relative to representing the board, the members-elect, who had been denied their offices,

were only willing to be responsible for costs and fees, in case they lost in the district court, in the sum of $50, and that under such circumstances they did not intend to appeal the case, but would abide the decision of said court; and that in view of this, although the attorneys agreed to "carry the case through," all parties had in mind the district court, and that therefore the agreement relative to the fee had relation solely to services rendered in such court, and that therefore the instructions to the jury relative to the final termination of the case and its final ending, etc., were erroneous and harmful. On the other hand, defendants in error claim that while it is true, if they lost in the district court, they did not contemplate an appeal, but intended to abide its decision and pay as individuals $10 apiece, making $50 for the five members, for the services rendered, yet that in case said board prevailed in the district court and the fee became properly chargeable to the school district, it would pay a fee of $100, and that in this event the parties had in mind the possibility of an appeal, and with this in mind the attorneys had agreed to accept such sum and carry the case through to the end. As we view the matter, the accuracy of the instructions depends upon the state of the proof when they were given; and we set out certain portions of the testimony of the various witnesses:

Dr. Sharp, one of the defendants, among other things, stated:

"Well, I know I said I would be willing to assume $10 to see the matter tried out, if we lost, and that I would assume $50, but that each member should be responsible for his own $10, in case we lost. I know that at the time I said: 'Now, while that is the compensation that we pay out of our own pockets, if we lost, we are representing the taxpayers in this matter, and it is our

duty to look after their interests as much as our own in the matter of expenses we incur, and I insist that we know what we should pay in case we win.' I don't remember just whose words it was, but the substance of it was that Judge Dale agreed to accept $100, in case we won. Well, in substance, he said he would accept $100 in case we won. I insisted. I said, 'Now, we want to know what that means? Does that mean to carry this case clear through?' And Judge Dale said: 'Yes, that means carry it clear through.' And I wouldn't say positively, but some one raised the point, I believe Dr. Barker, in case we lost in the district court, we wouldn't go any further, and we would pay our $50, and quit, but in case we won in the district court, why, Judge Dale agreed to see the case—well, he didn't agree; he said he would see the case through for $100. I insisted on knowing whether that meant to see it through to a finish, and he said it did."

On cross-examination, this witness answered as follows:

"I think, as I remember now, the Supreme Court was mentioned, but the question, as I, a member of the board, understood, was that our obligation would cease if we were defeated in the district court on the payment of $10, but that if we won in the district court and the suit was carried further, then is where I raised the point that, 'What was it going to cost to see the thing through?' I remember very distinctly raising and asking the question of whether that meant to see it through to a finish, and I remember very distinctly your saying, 'Yes; that means seeing it through to a finish.' And I remember the statement, I said: 'Now, that means that if we are licked in the district court, we pay $10 and are relieved from further obligation, but if we win in the district court, it is only going to cost us $100 anyway, and you said: 'Yes, to see it through to a finish.'

"Mr. Dale: Now, was the words, 'to see it through to a finish' used there at all? A. That is my recollection.

Q. Now, then, Dr. Sharp, do you mean to state to the court and jury that anything whatever was said in reference to work in the Supreme Court? Answer that, Yes, or No. A. Yes, sir."

Dr. Barker, another defendant and member of the board, among other things, made the following statements:

"Q. Who was to pay the $50 if you lost the case? A. The individual members of the board, personally, were to pay $10 apiece. A. He finally said he would take it for $100; I don't remember whether he asked more in the first place or not, but he finally said he would take $100 if he won the case; that he would win it for $100, or lose it for $50. I remember when he said he would want $100 if he won the case, Dr. Sharp says: 'Now, we want to be sure about this, and I want to know, and the board wants to know, whether that means that is all we will have to pay if we win the case; if that ends it.' And Judge Dale said that meant all there would be to pay; that that was the limit. Q. Do you remember there was nothing said about the Supreme Court? A. I don't remember that it was mentioned, that the word, 'Supreme Court,' was really mentioned, but you did say you would carry the case through for $100. Q. Now, was it not your understanding that you people were making a contract to carry this case through to the Supreme Court? A. I understood that we were; yes, sir; and that you were to win the case for us, if it was possible to do it. Q. That I was to win it? A. Yes, sir; for $100."

We take the following from Dr. Melvin's testimony:

"A. Well, Judge Dale and Dr. Sharp carried the conversation principally. I listened very closely to what was said, and my understanding was that: Judge Dale said if we lost the case, he would charge us $50, $10 apiece for five of us, and if he won the case, it would be more. He finally said he would charge $100 to see the case through. Q. Dr. Melvin, do you recollect Dr. Sharp's asking Judge

Dale whether or not he would see the board through to a finish for the fee of $100? A. Yes, sir."

Mr. Beyer, another defendant, stated:

"A. After we determined to prosecute our cause, naturally the question of fees arose, and Judge Dale suggested $75 in the event that we as individuals had to pay —if we lost. And some member—perhaps it was Mr. Fish—objected to that, and reduced it to a $10 limit, which was finally acquiesced in by each member, and consented to by Judge Dale. After that, I think it was Dr. Sharp raised the question of what the district would be liable for in the event we won, how much they would have to pay, and I think Judge Dale said $125, and Sharp —I believe it was Dr. Sharp—suggested he thought $100 would be sufficient, to which opinion Judge Dale finally consented. Q. Well, what did he say? A. He said that he would try this case in behalf of this new board, as it was called, and if we were defeated, if we were not declared the legal board, that it would cost us individually $10 apiece; if we won the case, if we were seated as the legal board, a fee of $100 would be charged against the district."

Judge Dale, one of the plaintiffs and the attorney who made the contract with the board, gave the following version of what occurred on this point:

"A. What I said was this: When Fish objected to paying $15 apiece—said he didn't want to stand but $10 —I said: 'All right; let it go at that, and if the district has to pay it, of course I will get a reasonable fee.' Then Dr. Sharp spoke up and says: 'Well, now, how much will it be if the district has to pay it?' 'Well,' I said, 'about $125.' 'Oh, well,' he says, 'now if the district has to pay it, I think you ought to handle it for $100,' and I was anxious to get to work and push the thing along, and I said: 'All right; let it go at that.' That was for the district court work, and they all understood it that way. At least Dr. Barker and Dr. Melvin did."

After a somewhat careful study of all the evidence in the case, including that set out, and the instructions of the court complained of, in connection with those parts to which no objection is made, we have come to the conclusion that the court's view of the case and the law applicable was correct. In other words, that it was a question as to what was the contract of employment, and what it embraced. There was ample evidence to sustain the board's contention that the contract contemplated services in the appellate court, in case the board prevailed below and the case was appealed against it. If this had not been in the minds of the board, the specific inquiries made by Dr. Sharp in the presence of the other members, when Judge Dale agreed to accept the case for $100, if he won, wherein he asked the judge to know just what that meant, saying, "Does that mean to carry this case clear through?" and where Judge Dale said, "Yes; that means carry it clear through," would not have been made. It will be borne in mind that these inquiries and responses had relation to the contingency that the board won, in which event the district would pay the fee, and it seems that the board members were solicitous, as of course it was their duty to be, to know just what liability they were fixing on the district, in case they were successful.

There is no controversy but that the board intended to stop with the district court, if they lost, and pay the $50, five of them paying $10 apiece. Viewing it in this light, which is evidently the light in which the trial court viewed it, we think that the instructions fairly state the law, and that instruction No. 10 was correct. We think, in determining the nature of a contract to handle a case between an attorney and a layman, that the final termina-

tion of a case brought in the district court means the end of it, regardless of where that end may come; that is the way a layman would understand it, and we think that is the way it would ordinarily be understood by a member of the bar in making such contract. It will not do to say, because the mode of review provided in this state is by writ of error, and such proceedings are generally classed as in the nature of original actions, as was said in *Springfield Fire & Marine Ins. Co. v. Gish-Brook & Co.*, 23 Okla. 824, 102 Pac. 708, that it would be so entirely an independent action and separate proceeding as to justify the contention that a lawyer, contracting to carry his client's case through to the end, would merely mean the end in the district court, and not include and contemplate services on appeal.

We think, under the facts, the law of the case was substantially given by the court; and, if this view is correct, the instructions asked and refused were properly refused, and will not be discussed in detail.

The judgment of the trial court should be affirmed

By the Court: It is so ordered.